UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**HENRY ALEXANDER FUENMAYOR,**

       **Petitioner,**

v.                                                                                     Case No. 6:23-cv-2387-CEM-RMN

**VANESSA ANDREINA ESCALONA,**

       **Respondent.**
_____/

**ORDER**

THIS CAUSE is before the Court on the Verified Petition for the Return of Child ("Petition," Doc. 1), wherein Petitioner seeks the return of his minor child to Venezuela pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("the Convention") and its implementing legislation, the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001–9011. An evidentiary hearing was held on January 16 and 17, 2024. (Min. Entry, Doc. 18, at 1; Min. Entry, Doc. 20, at 1). For the reasons set forth below, the Petition will be denied.

I.     FINDINGS OF FACT[1]

Petitioner and Respondent are both from Venezuela and were involved in a romantic relationship, which resulted in the birth of a child (the "Child") in 2018. Sometime in the Child's first year, the parties ended their relationship.[2] At that time, the Child lived with Respondent, but Petitioner saw him regularly and provided financial support. In 2020, Respondent got married and began discussing the possibility of relocating to the United States with her new husband and the Child.[3] Although Petitioner considered allowing this, he ultimately refused to consent to the move.

In March 2021, Respondent decided to leave Venezuela with the Child regardless of Petitioner's consent and without informing Petitioner. Petitioner was not able to get in touch with Respondent for approximately two to three weeks—the time period when Respondent and her family were traveling to the United States and getting settled in the Orlando area. Petitioner established communication with Respondent via WhatsApp on March 29, 2021 and confirmed that Respondent had

---

[1] Under ICARA, courts are directed to "decide the case in accordance with the Convention," and therefore, the Court acts as both legal arbiter and factfinder.
[2] Petitioner contends that the relationship ended when the Child was approximately one year old and Respondent contends that it ended when the Child was approximately five months old. For purposes of this Order, the exact time that the relationship ended does not matter.
[3] It appears that Petitioner and Respondent discussed the possibility of them both obtaining visas to come to the United States. Petitioner began the process of renewing his expired visa in January 2021 but Respondent was not able to obtain a visa. Apparently, this is where the discussions broke down because Petitioner would not consent to Respondent taking the Child into the United States through illegal channels.

taken the Child out of Venezuela and to the United States. (Pl. Ex. 1, Doc. 21-1, at 1). Two days later, Respondent gave Petitioner her mother's phone number so that Petitioner could speak with the Child. (*Id.*).

In October 2021, Petitioner filed paperwork in Venezuela, attempting to start the process under the Convention to have the Child returned. (Pl. Ex. 2, Doc. 21-2, at 1; *see also generally* Ex. 3 to Pet., Doc. 1-3). In connection with his filing, Petitioner requested pro bono counsel, but none was appointed. No further action was taken on Petitioner's filing until he filed this case on December 13, 2023.

In November 2021 Petitioner obtained a visa that allowed him to travel to the United States, and in December 2021 Petitioner traveled to Florida to visit the Child. During the intervening years, Petitioner traveled to Florida an additional six times to visit the Child. Although it appears that Petitioner was granted access to the Child any time he visited—including when he showed up unannounced—the parties formalized their arrangement in April 2022 by signing a document titled Minor Child Visitation Agreement ("Visitation Agreement," Pl. Ex. 3, Doc. 21-3).

As relevant here, the Visitation Agreement established the Child's residence at Respondent's address in Orlando, Florida, and placed temporary custody of the Child with Respondent. (*Id.* at 1). It also restricted Respondent to living in Florida unless Petitioner agreed otherwise, and Petitioner agreed not to remove the Child from the United States "unless otherwise ordered by a Family Court." (*Id.*). Finally,

it noted that Petitioner had initiated proceedings under the Convention and that a "Judge of the state of Florida is to make a final decision pursuant to the laws of the state and of the United States of North America, as to where the minor child is to remain for his own well-being." (*Id.* at 2).

From this time through December 2023, things appeared to have proceeded in a relatively uneventful manner. Then something occurred in or around December 2023 that prompted Petitioner to file this case. What spurred Petitioner into action is not clear from the record, but it is irrelevant for purposes of this Order. At the time of filing, Petitioner was pro se. But the Court subsequently appointed pro bono counsel.[4]

## II.   CONCLUSIONS OF LAW

"The Hague Convention was enacted to 'secure the prompt return of children wrongfully removed to or retained in any Contracting State' and to 'ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.'" *Ruiz v. Tenorio*, 392 F.3d 1247, 1250 (11th Cir. 2004) (quoting the Convention, art. 1). Both the United States and Venezuela are Contracting States. Status Table, Hague Conference on Private

---

[4] The Court expresses its gratitude to both attorneys in this case—Andrew Searle and Kevin Ross—who graciously volunteered their time in this matter.

International Law (Jan. 18, 2023) https://www.hcch.net/en/instruments/conventions/status-table/?cid=24.

To effectuate the Hague Convention's goals, "an individual may petition a court authorized to exercise jurisdiction in the place where a child is located for the return of the child to his habitual residence in another signatory country." *Chafin v. Chafin*, 742 F.3d 934, 936 (11th Cir. 2013). In addressing such a petition, a court may "determine only rights under the Convention and not the merits of an underlying child custody dispute." *Id.* "A petitioning parent must prove 'by a preponderance of the evidence, that [their] child was wrongfully removed or retained within the meaning of the Convention.'" *Berenguela-Alvarado v. Castanos*, 950 F.3d 1352, 1358 (11th Cir. 2020) (quoting *Chafin*, 742 F.3d at 938). There are "three elements to establish a prima facie case of wrongful retention: (1) that [the Child] 'was a habitual resident of [Venezuela] immediately before [their] retention in the United States"; (2) that [Respondent's] retention breached [Petitioner's] custody rights under [Venezuelan] law; and (3) that [Petitioner] "had been exercising [his] custody rights at the time of retention." *Id.* (quoting *Chafin*, 742 F.3d at 938).

A.  **Prima Facie Case**

Although Respondent did not explicitly concede that Petitioner had satisfied the second and third elements of the prima facie case, she made no argument in contradiction. And Petitioner presented sufficient evidence to satisfy those elements.

As to the first element, Respondent combines an argument about the Child's place of habitual residence with an argument about Petitioner's acquiescence to retaining the Child in the United States. However, Petitioner established that before Respondent removed the Child from Venezuela, Venezuela was the Child's habitual residence and, at least prior to Respondent leaving, Petitioner did not consent to that changing. Respondent's other arguments are better analyzed under the acquiescence defense, which the Court addresses below. As such, Petitioner has sufficiently established his prima facie case at least as to the removal of the Child from Venezuela and the initial retention of the Child in the United States.

Where "the petitioning parent proves by a preponderance of the evidence that a wrongful removal or retention has occurred, [the petitioner] is entitled to have the child returned unless the retaining/removing parent can establish one of several enumerated affirmative defenses." *Id.* at 1358–59 (citing 22 U.S.C. § 9003(e)(1)-(2); *Gomez v. Fuenmayor*, 812 F.3d 1005, 1011 (11th Cir. 2016)). However, "these affirmative defenses should be 'construed narrowly' so as 'to prevent them from swallowing the rule and rendering the Convention a dead letter.'" *Id.* (quoting *Gomez*, 812 F.3d at 1011). Respondent asserts two affirmative defenses: (1) consent or acquiescence and (2) the well-settled exception.

### B.   Consent or Acquiescence

"Under the Hague Convention's plain, unambiguous language, consent before the removal and retention or subsequent acquiescence extinguishes the right of return." *Romero v. Bahamonde*, No. 1:20-cv-104 (LAG), 2020 U.S. Dist. LEXIS 249721, at *38 (M.D. Ga. Nov. 19, 2020) (quoting *Gonzalez-Caballero v. Mena*, 251 F.3d 789, 794 (9th Cir. 2001)); *see also* Convention, art. 13(a) ("[T]he judicial . . . authority of the requested State is not bound to order the return of the child if the person . . . [who] opposes its return establishes that . . . the person [seeking the return] . . . consented to or subsequently acquiesced in the removal or retention."). "The defenses of consent or acquiescence are analytically distinct in that '[t]he consent defense involves the petitioner's conduct prior to the contested removal or retention, while acquiescence addresses whether the petitioner subsequently agreed to or accepted the removal or retention.'" *Cunningham v. Cunningham*, 237 F. Supp. 3d 1246, 1277 (M.D. Fla. 2017), *aff'd*, 697 F. App'x 635 (11th Cir. 2017) (quoting *Baxter v. Baxter*, 423 F.3d 363, 371 (3d Cir. 2005)). It is Respondent's burden to establish Petitioner's consent or acquiescence by the preponderance of the evidence. 22 U.S.C. § 9003(e)(2)(B).

Respondent briefly argued that Petitioner consented to the removal of the Child prior to coming to the United States, but as discussed above, the Court concluded that no such consent was given. And, to the extent Respondent testified that Petitioner gave verbal consent, that testimony was vague and evasive—which

was a noticeable change from the coherent and detailed testimony Respondent otherwise gave. Thus, the Court does not find Respondent's testimony regarding Petitioner's consent prior to the Child's removal credible, and she has not met her burden as to that issue. This, however, is not dispositive of the issue of acquiescence.

"The defense of 'acquiescence has been held to require an act or statement with the requisite formality, such as testimony in a judicial proceeding; a convincing written renunciation of rights; or a consistent attitude of acquiescence over a significant period of time.'" *Cunningham*, 237 F. Supp. 3d at 1277 (quoting *Baxter*, 423 F.3d at 371 which applied the standard set forth in *Friedrich v. Friedrich*, 78 F.3d 1060, 1070 (6th Cir. 1996)); *see also Walker v. Walker*, 701 F.3d 1110, 1123 (7th Cir. 2012) (applying the *Friedrich* standard); *Nicolson v. Pappalardo*, 605 F.3d 100, 108 (1st Cir. 2010) (same). This inquiry turns on the subjective intent of the parent who is alleged to have acquiesced. *Cunningham*, 237 F. Supp. 3d at 1277; *see also Berenguela-Alvarado*, 950 F.3d at 1359 (11th Cir. 2020) (applying a subjective intent analysis in the consent framework).

Respondent asserts that the Visitation Agreement constitutes express acquiescence to the Child remaining in the United States. As an initial matter, Respondent urges the Court to conduct a technical reading of the Visitation Agreement and apply it strictly. However, the point of reviewing the Visitation Agreement here is not for enforcement of the Agreement, it is to discern Petitioner's

intent. And the Visitation Agreement is an imprecise instrument that appears contradictory in some places. Specifically, the Visitation Agreement appears to indicate that Petitioner is consenting to the Child remaining in Florida while at the same time reserving his right to seek return of the Child via the Convention process. Therefore, the Court cannot conclude that the Visitation Agreement in and of itself constitutes a "a convincing written renunciation of rights." Nevertheless, it is one piece of a larger picture that indicates a consistent attitude of acquiescence over several years.

As explained above, Petitioner knew where the Child was within a matter of weeks after Respondent brought the Child to the United States. And while Petitioner originally objected to the removal and attempted to persuade Respondent and the Child to return to Venezuela in 2022, no such request was made since they signed the Visitation Agreement in April 2022 until the filing of this case. Further, although Petitioner started the process under the Convention in October 2021, and at least facially reserved the right to continue the process under the Visitation Agreement, he clearly abandoned that process. He took no further steps under the Convention between October 2021 and December 2023. Petitioner attempted to explain this delay by claiming that he had been actively searching for an attorney to take his case on a pro bono basis during those two years, but the Court does not find this explanation credible. First, there is no evidence of any specific steps taken by

Petitioner to obtain counsel during that time other than the initial filing in 2021—he simply testified that attorneys told him they would not take his case but provided no further details. Second, Petitioner's claim is belied by the fact that he filed this case pro se—he clearly was not waiting until he had an attorney to do so. And third, Petitioner admitted that he never attempted to retain an attorney, claiming that it was too expensive. But in the same breath, Petitioner stated that he had spent in excess of $40,000 traveling to the United States in the last three years.

It is unclear on the record what prompted Petitioner to file this case in December 2023—two and a half years after the Child was brought to the United States—but what is clear is that between April 2022 and December 2023, Petitioner was satisfied with the status quo and acquiesced to the Child remaining here. In sum, Petitioner knew where the Child was and visited him frequently; he did not request the return of the Child during that time period either through official channels or in communications with Respondent despite the fact that he was aware of the process by which he could do so; he supported the Child financially here; and he agreed in the Visitation Agreement for the Child to reside here unless Petitioner pursued relief under the Convention and then did not pursue such relief for over a year and a half. This is sufficient to demonstrate that Petitioner acquiesced to the retention of the Child in the United States. *See Giles v. Bravo*, No. 2:11-cv-01600-PMP-CWH, 2012 U.S. Dist. LEXIS 28228, at *22 (D. Nev. Jan. 27, 2012) ("[I]t took Petitioner over

one year to take proper legal action in the country where she knew the child was located. The Court finds that Petitioner exhibited a consistent attitude of acquiescence over a significant period of time."); *Ambrioso v. Ledesma*, 227 F. Supp. 3d 1174, 1189, 1190–91 (D. Nev. 2017) (finding that the petitioner acquiesced where, for a period of two months "[h]e provided financial support for his child"; "[h]e maintained contact with the child and [the respondent] and on at least one occasion expressed a desire for [the child] to remain in the United States" as well as considered relocating to the United States himself); *c.f. Flores v. Elias-Arata*, No. 3:18-cv-160-J-34JBT, 2018 U.S. Dist. LEXIS 122051, at *38 (M.D. Fla. July 20, 2018) (finding no acquiescence where "the Father repeatedly implored the Mother to return the Child to Peru, and when she did not, he immediately began to seek the Child's return."); *Mendez Lynch v. Mendez Lynch*, 220 F. Supp. 2d 1347, 1361 (M.D. Fla. 2002) (finding there was no acquiescence where the petitioner only agreed to the children traveling to the United States for a limited time period, "never waivered from his position that the children must be returned," and "consistently told his children's Florida teachers that he wanted the children returned to Argentina"); *Pozniak v. Shwartsman*, No. 20-cv-2956 (AMD) (RML), 2021 U.S. Dist. LEXIS 48599, at *32 (E.D.N.Y. Mar. 15, 2021) (finding no acquiescence due to "the petitioner's repeated requests that the respondent return [the child] to Israel").

Moreover, even if Petitioner did not acquiesce, Respondent has also established that the well-settled defense applies.

### C. Well-Settled

"[U]nder the Convention, if too much time has passed between the abduction and the filing, the right of return becomes circumscribed." *Fernandez v. Bailey*, 909 F.3d 353, 359 (11th Cir. 2018). "[W]hen a parent petitions for return more than a year after a child has been removed, the signatory country 'shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.'" *Id.* (quoting Hague Convention art. 12) (emphasis omitted). "This exception accounts for the reality that 'at some point a child may become so settled in a new environment that return is no longer in the child's best interests." *Id.* (quoting *Hernandez v. Garcia Pena*, 820 F.3d 782, 787 (5th Cir. 2016)); *see also Lozano v. Alvarez*, 572 U.S. 1, 15 (2014) ("[T]he expiration of the 1-year period opens the door to consideration of a third party's interests, i.e., the child's interest in settlement.").

"[A] child is settled within the meaning of ICARA and the Convention when a preponderance of the evidence shows that the child has significant connections to their new home that indicate that the child has developed a stable, permanent, and nontransitory life in their new country to such a degree that return would be to the child's detriment." *Fernandez*, 909 F.3d at 361. "Courts look to how frequently

children move around within their new country, whether they attend extracurricular and community activities, and whether they regularly attend school when determining whether they are well-settled." *Romero v. Bahamonde*, 857 F. App'x 576, 585 (11th Cir. 2021) (citing *Lozano*, 572 U.S. at 17). "Courts additionally consider the respondent and child's immigration status and whether the respondent concealed the child." *Figueredo v. Rojas*, No. 3:22-cv-1268-TJC-LLL, 2023 U.S. Dist. LEXIS 67831, at *13 (M.D. Fla. Apr. 18, 2023). Additionally, because "all returns will necessarily involve some level of disruption," "disruption should not be considered per se detrimental." *Fernandez*, 909 F.3d at 361. "Rather, the 'settled' inquiry requires courts to carefully consider the totality of the circumstances." *Id.*

As noted above, Respondent brought the Child to the United States in March 2021. At the time the Child was two years old. The Child has now been in the United States for nearly three years and is five years old. This Child lives with Respondent, her spouse, Respondent's mother, Respondent's brother, and Respondent's aunt in a home that they rent. The Child has only moved once while he was here and has remained in the same general area in or around Orlando. Respondent's sister also lives nearby and has a child near the Child's age, and they have a very close relationship. The Child has been enrolled in schooling in the United States since he was three years old and is currently in kindergarten. And while the Child has some sort of developmental or learning delay, he is receiving therapy both through his

school and privately that has helped him improve. Additionally, the Child is learning English at school through an English as a Second Language program. Respondent also credibly testified that the Child has made many friendships both in his school and in the neighborhood. He also participates in martial arts and attends church with his family. All of these factors indicate that the child is well settled. *See Romero*, 857 F. App'x at 585 (affirming the district court's determination that the children were well settled where they were doing well in school, only moved once, were involved in extracurriculars, had close friendships at school and in the neighborhood, and regularly spent time with their half-brother); *Figueredo*, 2023 U.S. Dist. LEXIS 67831, at *13 (finding eight year old well settled where, *inter alia*, they had a stable home, did well in school, made close friends, and enjoyed extra-curricular activities).

Despite the abundance of evidence that the Child, who has had a stable life in the Orlando area for nearly three years, has become well settled, Petitioner argues that this exception still does not apply due to the age of the Child. Petitioner cites non-binding case law that indicates that "[w]hile age alone is not dispositive in this inquiry, the younger the child is, the less likely it is that he or she is old enough to allow meaningful connections to the new environment to evolve." *Habrzyk v. Habrzyk*, 775 F. Supp. 2d 1054, 1067 (N.D. Ill. 2011) (quotation omitted). However, the cases that actually found the children to be too young to develop substantial

Page **14** of 17

connections involved younger children than the Child here. *See, e.g.*, *Cunningham*, 237 F. Supp. 3d at 1282 (noting that it was unsurprising that the child lacked "significant ties to her community" given that she was only eighteen months and collecting cases where children under the age of two were considered too young to develop such ties to the community); *Moreno v. Martin*, No. 08-22432-CIV-LENARD/GARBER, 2008 U.S. Dist. LEXIS 95406, at *65 (S.D. Fla. Oct. 10, 2008) (three years old); *Habrzyk*, 775 F. Supp. 2d at 1067 (four years old); *c.f. Arguelles v. Vasquez (In re Hague Child Abduction Application)*, No. 08-2030-CM, 2008 U.S. Dist. LEXIS 97048, at *33 (D. Kan. Mar. 17, 2008) (noting that the six year old child was still young enough to be "adaptable" but acknowledging the value of her friendships and focusing its analysis on the other instability of the child's life in determining that she was not well settled). Had Petitioner sought the return of the Child in a timelier manner, perhaps the Child would have been too young to have developed such connections. But Petitioner's nearly three year delay allowed the Child to grow old enough to develop friendships and connections at school, in his neighborhood, at church, with his extended family, and even with his medical practitioners who have helped the Child improve significantly in his academic development.

Petitioner also points to Respondent's uncertain legal status as undermining the Child's stability. Respondent and her spouse sought asylum upon entering the

United States, and those proceedings are ongoing. So, while Respondent has not been granted permanent legal status, she currently has a temporary protected status, is permitted to work, and is following the appropriate channels to obtain permanent status; thus, Respondent's legal status is not sufficient to undermine the other, abundant evidence that the Child is well settled. *See Romero*, 857 F. App'x at 585 (discounting the fact that the respondent and children were "currently not in lawful immigration status" given the other factors and that "the children [were] not under immediate threat of removal); *Figueredo*, 2023 U.S. Dist. LEXIS 67831, at *14 (finding the fact that the respondent was in asylum proceedings insufficient to undermine the other evidence that the child was well settled).

Nevertheless, Petitioner asserts that the Court should still order removal of the Child. "[A] court can order the return of a wrongfully removed child who is settled in his new environment." *Fernandez*, 909 F.3d at 362. However, doing so should only occur in rare circumstances. *Id.* First, Petitioner has not cited any case law indicating that this discretion exists even when the Court has determined that the acquiescence defense applies. Additionally, even if it did, Petitioner has not explained why this case presents extraordinary circumstances sufficient to require the return of the Child despite the Child clearly being well settled and thriving in his current environment. *See Figueredo*, 2023 U.S. Dist. LEXIS 67831, at *16 (declining to return a well settled child when there was no compelling reason to do

so and explaining that individual "[c]hildren should not be made to suffer for the sake of general deterrence of the evil of child abduction world wide" (quoting *Lozano*, 572 U.S. at 16)).

Accordingly, Respondent has met her burden to show that the well-settled exception also applies and that the Child should not be returned to Venezuela.

### III. CONCLUSION

In accordance with the forgoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Verified Petition for the Return of Child (Doc. 1) is **DENIED**.

2. The Temporary Restraining Order (Doc. 2) is **DISSOLVED**.

3. The Clerk is directed to release the Respondent's and Child's documents to Respondent or her legal counsel and to close this case.

**DONE** and **ORDERED** in Orlando, Florida on January 23, 2024.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record